DONALD S. GREER

2403 Hulemalu Rd.

PO Box  583

Lihue, Hawaii  96766

Telephone:  808 278 0344

Email:        Don1retired@gmail.com

**FILED IN THE**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**
28 June 2022 12:56 PM lrs

**Pam Hartman Beyer, Clerk of Court**

PD

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| DONALD S. GREER Ph D, | ) |
| | ) |
| Plaintiff, Pro se | ) |
| | ) |
| | ) **CIVIL ACTION No.** 22-00286-LEK-WRP |
| vs. | ) |
| | ) |
| STATE OF HAWAI`I; DEPARTMENT | ) **COMPLAINT;** |
| OF COMMERCE AND CONSUMER | ) **DEMAND FOR JURY TRIAL;** |
| AFFAIRS; DCCA DIRECTOR | ) **MOTION FOR SUMMARY** |
| CATHERINE P. AWAKUNI COLON; | ) **JUDGMENT;** |
| REGULATED INDUSTRIES | ) **SUMMONS.** |
| COMPLAINTS OFFICE; RICO | ) |
| COMPLAINTS AND ENFORCEMENT | ) **ATTACHMENTS:** |
| OFFICER ESTHER BROWN; | ) 1. RICO's Consulting Physician's |
| DEPARTMENT OF HUMAN | ) Testimony - Why it is Fraudulent |
| SERVICES; DEPARTMENT OF | ) 2. RICO's consulting physician's |
| LABOUR AND INDUSTRIAL | ) testimony |
| RELATIONS; HAWAII CIVIL RIGHTS | ) 3. Dr Fitzgerald's RICO testimony |
| COMMISSION; | ) |
| | ) |
| COUNTY OF KAUA`I; KAUA`I POLICE | ) |

1

DEPARTMENT; KPD CHIEF TODD G.    )
RAYBUCK; KPD LIEUTENANT          )
CHRISTOPHER CALIO;               )
KAUA'I POLICE  COMMISSION;       )
and DOE DEFENDANTS 1-100         )
                                 )
            Defendants.          )

# COMPLAINT

Plaintiff Donald S. Greer hereby asserts the following claims and causes of action

against Defendants:

The State of Hawaii, Department of Commerce and Consumer Affairs (DCCA),

DCCA Director Catherine P. Awakuni Colon, Regulated Industries Complaints

Office (RICO), RICO Complaints and Enforcement Officer Esther Brown,

Department of Human Services (DHS), Department of Labor and Industrial

Relations (DLIR), Hawaii Civil Rights Commission (HCRC).

The County of Kauai, Kauai Police Department (KPD), KPD Chief Todd G.

Raybuck, KPD Lieutenant Christopher Calio, Kauai Police Commission (KPC)

and DOE Defendants 1-100.

## Nature of Complaint

1.      This is a Deprivation of Civil Rights Complaint (section 1983 claim); Plaintiff's civil right against disability discrimination and Plaintiff's civil right to equal protection of the laws.

2.      Defendants are covering-up a "Hate Crime" and "Elder Abuse". Defendants have condoned the withholding and concealment of medical treatment for Plaintiff's disabilities. Defendants have condoned the poisoning of the Plaintiff by Kauai physicians, a poisoning that has caused serious bodily harm to Plaintiff. Defendants have condoned the medical abandonment by Kauai physicians for failure to treat Plaintiff's injuries incurred by the poisoning.

**"Hate Crime" and "Elder Abuse" Summary.**

3.      Plaintiff contracted polio as a child in 1957 at the age of 4 years. The polio destroyed about one third of Plaintiff's nerves. Plaintiff contracted a varicocele at puberty in 1966 at the age of 13 years. The varicocele prevented Plaintiff's left testicle from developing at puberty. Plaintiff's left testicle is atrophic and non-functional. Varicocele corrective surgery has been available since the 1950's.

3

There is a 50% chance of a full testicular recovery and a 90% chance of a partial testicular recovery with corrective varicocele surgery.  Physicians fraudulently diagnosed the atrophic testicle as due to nerve damage from polio and untreatable with the exception of removal. There are no cases of polio causing testicular atrophy at puberty. Varicoceles are the number one cause of testicular atrophy at puberty. Physicians withheld medical varicocele treatment for Plaintiff's testicular disability and physicians used Plaintiff's polio disability to persuade Plaintiff there was no treatment for the atrophic testicle. The withholding of disability medical treatment continued from physician to physician for over 50 years. In November 2018, at the age of 65 years, Plaintiff discovered that the left atrophic testicle was due to a varicocele and was medically treatable. Plaintiff demanded varicocele corrective surgery with the hope of restoring the functionality of the atrophic testicle. Physicians prescribed the drug, tamsulosin, a testicular poison, with the intent to destroy the atrophic testicle and to prevent testicular recovery after surgery. Plaintiff had a severe adverse reaction to the tamsulosin as the tamsulosin attacked the Plaintiff's vascular smooth muscles altering the blood-organ barrier causing brain damage, heart failure, eye damage, digestive damage and destroying Plaintiff's left atrophic testicle and shrinking Plaintiff's normal right testicle by 23%. Physicians verified that the left atrophic testicle had been destroyed with an ultra sound test and then abandoned the patient (Plaintiff). Kauai physicians have

refused to treat Plaintiff adverse reaction to the tamsulosin with the exception of Plaintiff's eyes which are being treated by an ophthalmologist.

4.    Plaintiff's brain damage has resulted in dementia, cognitive and memory dysfunction, and insomnia. The "Hate Crime" and "Elder Abuse" is ongoing as Plaintiff continues to suffer from the withholding of disability medical treatment and the withholding of medical treatment for injuries caused by the adverse reaction to the tamsulosin. Plaintiff is most likely experiencing micro strokes (micro bleeding in the brain) as a result of weakened blood vessels (capillaries) caused by the adverse tansulosin reaction. This is validated by the presence of white matter hyperintensities in Plaintiff's brain MRI. White matter hyperintensities are an indication of micro bleeding, vascular disease, and Alzheimer's within the brain.

5.    Plaintiff has been referred, May 17, 2022, to the Hawaii Neuroscience Center on Oahu for formal testing of Plaintiff's brain damage due to the tamsulosin adverse reaction. This referral that should have been made 3 years ago, in February 2019.

6.      Pro se by Right. The motive of disability discrimination that caused physicians to withhold medical treatment for Plaintiff's atrophic testicle; is the same motive of disability discrimination that caused Defendants, under the color of law, to look the other way and condone this criminal activity; is the same motive of disability discrimination that caused civil rights and personnel injury lawyers to look the other way and condone this criminal activity as well.

7.      Defendants claim that the "Hate Crime" and "Elder Abuse" complaint is not a crime, but is instead, non-criminal medical malpractice. Defendants have provided no facts to justify this claim. Defendants have ignored key issues in the "Hate Crime" and "Elder Abuse" complaint such as: What happened to Plaintiff's testicles? Where is the medical documentation showing that tamsulosin is appropriate for testicular pain and prescribed in the best interest of the patient? Why did Dr Fitzgerald fail to mention the atrophic left testicle in the medical record? And then there is the issue of the falsified CT test.

8.      Defendants, under the color of law, have a legal duty to protect the Plaintiff, an elder and vulnerable adult, from harm and abuse, but have chosen to look the other way and let the Plaintiff suffer.

6

9.     Kauai Prosecutors Justin Kollar, Kimberly Torigoe, and Rebecca Like have accepted plea deals, confidential dispositions, with the Office of the Disciplinary Counsel for prosecutorial misconduct in this matter. Kauai County Prosecutor Justin Kollar resigned.

10.     Plaintiff is seeking damages from Defendants for injuries caused by violations of Plaintiff's civil rights; disability discrimination and equal protection of the laws.

11.     Plaintiff requests a jury trial.

## Jurisdiction

12.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, 1332, 1343, 1367, 2201, 2202; 42 U.S.C. § 1981, 1983, 1985, 1986, 1988, 3058i, 10801, 18116; Americans with Disabilities Act Title II, 28 C.R.F. § 35.101, 35.130, 35.178, 42 U.S.C. 12131-12134; Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq; Rehabilitation Act of 1973, 29 U.S.C. § 794; Eleventh  Amendment to the U.S. Constitution; Fourteenth Amendment to the U.S. Constitution; HI Rev Stat §346-224, 227, 228, 231; HI Rev Stat § 368-1, 1.5; HI Rev Stat § 480-2, 13, 15; HI Rev

Stat § 489-3, 5, 7, 7.5, 22; HI Rev Stat § 662-2; HI Rev Stat § 663-1, 8.5, 8.7, 10.9; HI Rev Stat § 710-1028, 1029; HI Rev Stat § 846-51.

13.     The Court has the authority to award relief and damages under 28 U.S.C. § 1343, 2201, 2202; 28 CFR § 35.178; 42 U.S.C. § 1983, 1985, 1986, 1988, 2000d–7, 12133, 18116; HI Rev Stat § 480-13, 15; HI Rev Stat § 489-7, 7.5, 22; HI Rev Stat § 662-2; HI Rev Stat § 663-1, 8.5, 8.7, 10.9.

## Venue

14.     The Court is the proper venue pursuant to 28 U.S.C.A. §1331, 1332, 1343. The Plaintiff and Defendants reside in the State of Hawaii. The complaint actions and claims took place in the State of Hawaii.

## Parties

15.     Plaintiff, Dr Donald Greer, is and was at all relevant times a resident of the County of Kauai, State of Hawaii. Dr Greer has a PhD from U.C. Santa Barbara in Engineering, an expert in Energy Systems and Aerodynamics, has worked National Defense for The National Aeronautics and Space Administration (NASA) and

several Department of Defense Contractors. Dr Greer has been involved with Titans launches at Vandenberg AFB and Space Shuttle launches at Kennedy Space Center. Dr Greer had the privilege to modify an F-15 and conduct flight experiments at Edwards AFB. Dr. Greer is published in the American Institute of Aeronautics and Astronautics (AIAA) Journal of Aircraft. Dr Greer also taught at Colleges and Universities including the Kauai Community College where Dr Greer taught Physics and an introductory course in lasers.

16.     Defendants, State of Hawaii, Department of Commerce and Consumer Affairs, DCCA Director Catherine P. Awakuni Colon, Regulated Industries Complaints Office, RICO Complaints and Enforcement Officer Esther Brown, Department of Human Services, Department of Labor and Industrial Relations, and Hawaii Civil Rights Commission are and were at all times residing in the State of Hawaii.

17.     Defendants, County of Kauai, Kauai Police Department, KPD Chief Todd G. Raybuck, KPD Lieutenant Christopher Calio and Kauai Police Commission are and were at all times residing in the State of Hawaii.

**Factual Allegations**

18.    The 'Concise Statement of Facts' contains the primary factual allegations, attached.

19.    Additional facts are as follows.

* * * * *

20.    August 5, 2020, Plaintiff sent a request for help (complaint) to the State of Hawaii Attorney General Connors with copy to Kauai Prosecutors Kollar and Torigoe and KPD Chief Raybuck.

21.    September 2, 2020, Plaintiff received a response from Deputy Attorney General Shari Wong stating that after discussing Plaintiff's complaint with RICO's Supervising Enforcement Officer, RICO had determined that no crime has taken place; the Attorney General's Office took no further action.

22.    February 21, 2022, Plaintiff sent a letter to State of Hawaii Attorney General Shikada with copy to Deputy Attorney General Shari Wong stating that RICO's investigation was fraudulent citing the fraudulent statements made by RICO's

consulting physician. The letter also stated that Kauai Prosecutors Kollar and

Torigoe had accepted a plea deal with the Disciplinary Counsel for prosecutorial

misconduct in this matter.

23.    Plaintiff has received no response from the State of Hawaii Attorney

General's Office.

\* \* \* \* \*

24.    June 11 2020, Plaintiff filed the first "Hate Crime" and "Elder Abuse"

complaint with KPD and the Kauai County Prosecutors Office.

25.    July 30, 2020, KPD report from Sgt Caspillo states that Kauai Prosecutor

Torigoe reviewed and determined that the complaint was a non-criminal medical

malpractice matter.

26.    August 17, 2020, Kauai Prosecuting Attorney Special Investigator

confirmed that Kauai Prosecutor Torigoe reviewed and determined that the

complaint was a non-criminal medical malpractice matter.

27.     August 18, 2020, Plaintiff sent an email to Kauai Prosecutor Torigoe requesting 30 minutes to discuss the complaint.

28.     Kauai Prosecutor Torigoe refused to discuss the complaint as there was no response to Plaintiff's request to discuss the complaint.

29.     Kauai Prosecutor Torigoe must have a better than minimal set of professional standards and competency.

30.     Kauai Prosecutor Torigoe, a competent attorney, must have documentation to justify the decision that the "Hate Crime" and "Elder Abuse" complaint is a non-criminal medical malpractice matter.

31.     The only source of documentation available to Kauai Prosecutor Torigoe was the fraudulent RICO investigation, as KPD and the Kauai Prosecutor's Office did not perform an investigation.

32.     March 15, 2022, Plaintiff sent a commutation to Kauai County Prosecutor Like with notification that a new "Hate Crime" and "Elder Abuse" complaint had been filed with KPD showing that RICO's investigation was fraudulent,

referencing Plaintiff's white paper, 'RICO's Consulting Physician's Testimony - Why it is Fraudulent'.

33.    March 23, 2022, Kauai County Prosecutor sent an email to Plaintiff stating that the new "Hate Crime" and "Elder Abuse" complaint has been reviewed and it was determined that no hate crime has occurred.

34.    March 23, 2022, Plaintiff requested facts and justification for the Kauai County Prosecutor's decision.

35.    March 23, 2022, Kauai County Prosecutor refused to provide any facts and justification for the Kauai County Prosecutor's decision.

* * * * *

36.    June 11 2020, Plaintiff filed the first "Hate Crime" and "Elder Abuse" complaint with KPD.

37.    Subsequent and similar complaints were filed with KPD on January 2, 2021, February 16, 2021, March 11, 2021, March 12, 2021, March 15, 2021, March 22,

2021, March 30, 2021, April 2, 2021, April 17, 2021, May 1, 2021, May 5, 2021,

May 7, 2021,  May 8, 2021,  May 19, 2021, and October 11, 2021.

38.    All complaints were rejected and classified by KPD as non-criminal medical malpractice.

39.    Plaintiff was given no reason why KPD rejected the complaints as non-criminal medical malpractice.

40.    February 4, 2022, Plaintiff discovered the fundamental source of fraud, discrimination, cover-up of a "Hate Crime" and "Elder Abuse", and depravation of civil rights under the color of law; as Defendants (RICO) hired a consulting physician to review the complaint and provide fraudulent testimony to exonerate the perpetrators (physicians) and to provide RICO with an excuse to fraudulently dismissed the complaint.

41.    February 7, 2022, Plaintiff sent Defendants (RICO) a communication detailing the 10 fraudulent statements made by RICO's consulting physician; Defendants have refused to review or discuss the fraudulent statements.

42.     March 15, 2022, Plaintiff submitted the last and final "Hate Crime" and "Elder Abuse" complaint to KPD detailing the fraudulent testimony of RICO's consulting physician (including Plaintiff's white paper, 'RICO's Consulting Physician's Testimony – Why it is Fraudulent').

43.     March 15, 2022, Plaintiff also submitted to KPD the Disciplinary Counsel Notification letters showing that Kauai Prosecutors Justin Kollar, Kimberly Torigoe, and Rebecca Like have accepted plea deals, confidential dispositions, for prosecutorial misconduct regarding the "Hate Crime" and "Elder Abuse" complaint.

44.     March 15, 2022, KPD knew that the opinions and statements from the Kauai County Prosecutor's Office and RICO should be suspected as fraudulent.

45.     KPD rejected the March 15, 2022 "Hate Crime" and "Elder Abuse" complaint, refused to investigate the complaint, and refused to give any facts or justification for rejection.

\* \* \* \* \*

46.    February 17, 2020, Plaintiff submitted a "Hate Crime" and "Elder Abuse" complaint with DCCA – RICO. The complaint contained 42 specific elements of evidence from Plaintiff's medical records showing that the crime had occurred.

47.    May 8, 2020 and September 30, 2020, Plaintiff received documents (letters) from RICO stating that the complaint had been dismissed. RICO had found no medical licensing law violations. RICO provided no facts or justification for the decision.

48.    Plaintiff requested "facts and justification" from RICO for the decision. Plaintiff requested that the 42 specific elements of evidence contained in the complaint be explained.

49.    RICO refused Plaintiff's request to provide facts and justification.

50.    December 1, 2021, Plaintiff submitted a second "Hate Crime" and "Elder Abuse" complaint with DCCA – RICO.

51.     January 4, 2022, Plaintiff received a document (letter) from RICO stating that RICO has dismissed the complaint and found no medical licensing law violations. RICO gave no facts or justification for the decision.

52.     Plaintiff complained to RICO for facts and justification.

53.     RICO informed Plaintiff that there was more information and it was available in the file that Plaintiff could request for a price of $114.57.

54.     February 4, 2022, Plaintiff received the file and discovered the two fraudulent documents RICO had been concealing from Plaintiff for 16 and 19 months.

55.     The first fraudulent document was testimony from RICO's consulting physician. Please see Plaintiff's white paper 'RICO's Consulting Physician's Testimony - Why it is Fraudulent' dated March 15, 2022 for fraudulent details, ATCH 1.

56.     The second fraudulent document was testimony from Dr Fitzgerald. The testimony contains several statements that are in conflict with the medical record.

57.    February 7, 2022, Plaintiff sent a communication to RICO detailing the fraudulent testimony made by RICO's consulting physician.

58.    RICO has refused to review or discuss the fraudulent testimony.

* * * * *

59.    November 8, 2021, Plaintiff submitted a complaint with the Kauai Police Commission.

60.    February 18, 2022, the Kauai Police Commission dismissed the complaint giving no facts or justification.

* * * * *

61.    November 29, 2021, Plaintiff submitted an elder abuse complaint to the Department of Human Services.

62.     December 15, 2021, the Department of Human Services dismissed the complaint giving no facts or justification.

63.     Plaintiff requested and informal hearing to discuss the complaint.

64.     The request was refused. The Department of Human Services directed Plaintiff back to his abusers, Plaintiff's healthcare physicians.

*  *  *  *  *

65.     January 5, 2022, Plaintiff submitted a civil rights complaint ("Hate Crime" and "Elder Abuse") to the Hawaii Civil Rights Commission.

66.     January 24, 2022, the Hawaii Civil Rights Commission dismissed the complaint stating that the complaint has not occurred within 180 days (i.e. not ongoing) and that the "Hate Crime" and "Elder Abuse" complaint is non-criminal medical malpractice. No facts or justification was given for the decision.

67.     Plaintiff requested facts and justification for the decision.

68.    There was no response from the Hawaii Civil Rights Commission.

## Causes of Action

## Count 1

**69.    28 U.S.C. §1331, 1332, 1343, 1367, 2201, 2202; 42 U.S.C. § 1981, 1983, 1985, 1986, 1988, 3058i, 10801, 18116; Americans with Disabilities Act Title II, 28 C.R.F. § 35.101, 35.130, 35.178, 42 U.S.C. 12131-12134; Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq; Rehabilitation Act of 1973, 29 U.S.C. § 794; Eleventh  Amendment to the U.S. Constitution; Fourteenth Amendment to the U.S. Constitution; HI Rev Stat §346-224, 227, 228, 231; HI Rev Stat § 368-1, 1.5; HI Rev Stat § 480-2, 13, 15; HI Rev Stat § 489-3, 5, 7, 7.5, 22; HI Rev Stat § 662-2; HI Rev Stat § 663-1, 8.5, 8.7, 10.9; HI Rev Stat § 710-1028, 1029; HI Rev Stat § 846-51.**

## Deprivation of Civil Rights – By Fraud
## Plaintiff's Civil Right Against Disability Discrimination
## Plaintiff's Civil Right of Equal Protection of the Laws

70.     Defendants have obtained and used fraudulent documents to circumvent the laws to achieve the governments' desired outcome which is not to prosecute Kauai physicians for a felony involving a "Hate Crime" motivated by disability discrimination and "Elder Abuse" of a vulnerable adult.

71.     February 17, 2020, Plaintiff submitted a "Hate Crime" and "Elder Abuse" complaint to DCCA-RICO. RICO dismissed the complaint citing RICO had found no medical licensing law violations. RICO has given Plaintiff no justification or facts for its decision.

72.     December 1, 2021, Plaintiff submitted a second "Hate Crime" and "Elder Abuse" complaint to DCCA-RICO. RICO dismissed the complaint citing RICO had found no medical licensing law violations. RICO has given Plaintiff no justification or facts for its decision.

73.     February 4, 2022, Plaintiff first discovered the two fraudulent documents RICO was concealing from Plaintiff for over a year.  RICO obtained and used these two fraudulent documents to fraudulently justify dismissing Plaintiff's "Hate Crime" and "Elder Abuse" complaint.

First RICO fraudulent document - RICO's Consulting Physician's Testimony.

74.     Particularity is required when alleging fraud. Please find particularities in Plaintiff's white paper entitled 'RICO's Consulting Physician's Testimony - Why it is Fraudulent' dated March 15, 2022, ATCH 1.

75.     Please find RICO's consulting physician's testimony in ATCH 2 (Please note, this is how Plaintiff received the document from RICO, with no title page and a blank second page with a DCCA stamp).

76.     Defendants used falsified facts to determine that no medical licensing law violations occurred and ignored facts showing the criminality of Kauai physicians. Ignored facts such as:

A) What happened to Plaintiff's testicles while under Dr Fitzgerald's care?

B) Medical abandoned by Dr Fitzgerald.

C) Was the tamsulosin prescribed in the best interest of the patient?

D) Dr Fitzgerald's fraudulent medical record entry, failing to mention Plaintiff's atrophic testicle.

E) Plaintiff's CT did not contain the groin as claimed by Dr Fitzgerald.

F) Failing to meet a standard of care.

Second DCCA-RICO fraudulent document - Dr Fitzgerald's fraudulent testimony.

77.    The second document concealed by RICO from Plaintiff was testimony submitted to RICO by Dr Fitzgerald. Please find Dr Fitzgerald's RICO testimony, dated June 12, 2020 in ATCH 3.

Point 1 – Testicular Atrophy

78.    Dr Fitzgerald denies Plaintiff's atrophic testicle in the medical record. There is no mention of the atrophic testicle in the medical records for all five office visits. (Note: Dr Fitzgerald has mentioned atrophy only in relation to surgical complications.) Plaintiff's left testicle has been atrophic since the age of 13 years.

79.     Plaintiff took a testosterone test on May 15, 2017, two years prior to the

encounter with Dr Fitzgerald. The test results showed testosterone levels to be half

of normal (Plaintiff  214 - normal range 300 to 720) due to the atrophic left testicle.


80.     Plaintiff took the first ultra sound test on January 11, 2019, between Dr

Fitzgerald's first and second office visits, that shows an atrophic left testicle and

varicocele.


81.     The figure of Plaintiff's atrophic left testicle shows the testicle located tight

against the lower abdomen with no loose left scrotum skin. This condition

indicates that the testicle has been atrophic since puberty, when most male atrophic

testicles occur. Had the testicle developed at puberty and then subsequently, later

in life, developed atrophy, the atrophic testicle would be located lower, next to the

right testicle and lose scrotum skin would be present.


82.     Dr Fitzgerald's medical record of November 27, 2018 states, "*testicles

descended BILATERAL , atrophy appropriate for age*".

83.     Dr Fitzgerald's entire medical record fails to state that the left testicle is atrophic, to read the record, Plaintiff's left testicle is normal.

84.     Dr Fitzgerald fraudulently denied Plaintiff's atrophic testicle in the medical record and has admitted such:

A) Dr Fitzgerald's RICO testimony states in the second paragraph the results of the January 23, 2019 second examination, "*known left testicular atrophy*".

B) Dr Fitzgerald's RICO testimony states in the third paragraph, "*I educated him that varicocelectomies don't reverse testicular atrophy*".

Point 2 – Testicular Catch-up Growth

85.     Dr Fitzgerald's RICO testimony states in the third paragraph, "*I educated him that varicocelectomies don't reverse testicular atrophy*".

86.     This statement is contrary to the medical record as there is no such statement in the medical record.

87.    Plaintiff's white paper, 'RICO's Consulting Physician's Testimony - Why it is Fraudulent', establishes that Dr Fitzgerald's statement is fraudulent. Testicular catch-up growth is always expected as concluded by the 'Practice Committee of the American Society for Reproductive Medicine and the Society for Male Reproduction and Urology, Report on varicocele and infertility: a committee Opinion' ; "Varicocele repair may be offered on detection of testicular or semen abnormalities, as catch-up growth has been demonstrated as well as reversal of semen abnormalities".

Point 3 – Refusal of Physical Exam

88.    Dr Fitzgerald's RICO testimony states in the fifth paragraph, "*He refused a physical exam citing the pending CAT scan*".

89.    No such statement is made in Dr. Fitzgerald's medical notes.

Point 4 – Fraudulent CT Scans

90.    Dr Fitzgerald's RICO testimony states in the fifth paragraph, "*I recommended that he undergo a CT of the abdomen and pelvis to look for a*

*malignancy*" and "*I reviewed the CT findings with my patient, explaining that no malignancies or primary causes contributing to varicocele were identified*".

91.    Dr Fitzgerald's medical record of March 4, 2019 states, "*After Computed tomography abd pelvis (include groin secondary to history of varicocele) W / WO contrast If you have persistent left varicocele pain and no abd groin etiology we will offer you a left varicocelectomy laparoscopic versus open groin procedure*".

92.    Dr Fitzgerald's two statements are in conflict. Dr Fitzgerald's RICO testimony states *abdomen and pelvis.* Dr Fitzgerald's medical record states *groin.*

93.    The actual CT scan did not contain the left atrophic testicle, and varicocele because the groin was not scanned (omitted).

94.    Dr. Fitzgerald could not look for malignancy in the groin area where the atrophic left testicle and varicocele reside and could not review the results with Plaintiff.

Point 5 – Why Tamsulosin Was Prescribed

27

95.     Dr Fitzgerald's RICO testimony states in the fourth paragraph,

*"Furthermore, I explained that due to his history of elevated post-void residual, urine can easily be present in the prostatic urethra during normal day-to-day heavy lifting or other Valsalva-producing activities. Valsalva can increase pressure in the prostatic urethra and in rare situations contribute to urethra-ejaculatory reflux, which in turn can cause pain radiating to one or both testicles. He was offered Folmax because of its beneficial effect of relaxing the bladder neck, eliminating the risk of prostatic urethral pressures high enough to contribute to urethra-ejaculatory reflux or ejaculatory duct irritation at the level of the verumontanum. In addition, I pointed out that the Flomax may improve his incomplete bladder emptying overall."*

96.     Dr Fitzgerald's medical record does not mention any of the above including the *elevated post-void residual , Valsalva, urethra-ejaculatory reflux, relaxing the bladder neck*.

97.     The timelines do not correspond. Plaintiff has had testicular pain for 56 years, since the age of 13. Plaintiff had a urinary problem for 3 weeks at the age of 65 (most likely due to a bladder infection). It is ridiculously unreasonable to diagnose a 3 week bladder infection for the cause of 56 years of testicular pain.

98.     Dr Fitzgerald has failed to provide any peer reviewed, published medical documentation that shows tamsulosin to have any benefit for testicular pain. As the tamsulosin was prescribed off-label (not prescribed according to approved FDA labeling), Dr Fitzgerald is required to provide medical documentation showing that the drug was prescribed in the best interest of the patient.

99.     No medical documentation exists showing that tamsulosin, prescribed for testicular pain, is in the best interest of the patient.

100.    There is no history of elevated post-void residual urine as Dr Fitzgerald states. That test was performed only once. Plaintiff, like most patients, voided just prior to leaving from home for the medical clinic. The urine void test result, at 101 ml was perfectly normal. Note: 101 ml is a little less than a half a cup.

101.    It is ridiculously unreasonable for Dr Fitzgerald to prescribe tamsulosin for testicular pain based upon a half a cup of urine in Plaintiff's bladder.

102.    There was no medical requirement to prescribe tamsulosin or any other drug prior to corrective varicocele surgery as Plaintiff's left testicle is atrophic.

103.   The Practice Committee of the 'American Society for Reproductive Medicine and the Society for Male Reproduction and Urology, Report on varicocele and infertility: a committee opinion' states that all adolescents should have the varicocele corrected when the testicle is atrophic. Men are not mentioned in the opinion as there should be no men with atrophic testicles due to a varicocele at puberty.

104.    Prescribing a testicular poison prior to surgery would prevent testicular recovery after surgery.

End Points -

105.   Defendants knew the two documents were fraudulent:

A) Any reasonable person would have suspected a criminal element upon discovering that Dr Fitzgerald failed to note in Plaintiff's medical record that Plaintiff's left testicle was atrophic.

30

B) Any reasonable person would have suspected a criminal element upon discovering that Dr Fitzgerald failed to provide a "standard level of care" when the second ultra sound showed that Plaintiff's left atrophic testicle had been destroyed.

C) Defendants concealed the two fraudulent documents from Plaintiff for 19 months and 16 months, until February 4, 2022.

D) Defendants have not provided any facts or justification to support their claim that the "Hate Crime" and "Elder Abuse" is non-criminal medical malpractice, not ongoing, and at present, not causing Plaintiff pain and suffering due to the withholding of medical treatment by Kauai physicians.

106.   Defendants used fraudulent documents to violate Plaintiff's Civil Right, prohibiting discrimination on the basis of disability.

107.   Defendants used fraudulent documents to violate Plaintiff's Civil Right to "equal protection of the laws".

31

108.   Defendants actions (or inactions) and conduct directly and proximately created an environment allowing physicians to commit this "Hate Crime" and "Elder Abuse" with impunity.

109.   The Defendants' actions and conduct directly and proximately caused harm and damages to Plaintiff.

110.   Federal and Hawaii State law require Defendants to report, investigate, and protect the health and welfare of the disabled and abused Plaintiff, a vulnerable adult. 42 U.S. Code § 3058i ; HI Rev Stat §346-224, 227, 228, 231.

111.   The Court has the authority to award relief and damages under 28 U.S.C. § 1343, 2201, 2202; 28 CFR § 35.178; 42 U.S.C. § 1983, 1985, 1986, 1988, 2000d–7, 12133, 18116; HI Rev Stat § 480-13, 15; HI Rev Stat § 489-7, 7.5, 22; HI Rev Stat § 662-2; HI Rev Stat § 663-1, 8.5, 8.7, 10.9.

**Count II**

**112.   28 U.S.C. §1331, 1332, 1343, 1367, 2201, 2202; 42 U.S.C. § 1981, 1983, 1985, 1986, 1988, 3058i, 10801, 18116; Americans with Disabilities Act Title II, 28 C.R.F. § 35.101, 35.130, 35.178, 42 U.S.C. 12131-12134; Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq; Rehabilitation Act of 1973, 29 U.S.C. § 794; Eleventh  Amendment to the U.S. Constitution; Fourteenth Amendment to the U.S. Constitution; HI Rev Stat §346-224, 227, 228, 231; HI Rev Stat § 368-1, 1.5; HI Rev Stat § 480-2, 13, 15; HI Rev Stat § 489-3, 5, 7, 7.5, 22; HI Rev Stat § 662-2; HI Rev Stat § 663-1, 8.5, 8.7, 10.9; HI Rev Stat § 710-1028, 1029; HI Rev Stat § 846-51.**

### Deprivation of Civil Rights – Disability Discrimination

113.   The Plaintiff is disabled with two disabilities; 'Polio' which limits Plaintiff's major life activities requiring muscle strength and muscle coordination and 'Testicular' which limits Plaintiff's sexual life activity.

114.   Physicians have withheld disability medical treatment to correct Plaintiff's atrophic testicle due to a medically treatable varicocele for over 50 years. Plaintiff, upon discovering that medical treatment was available, demanded corrective varicocele surgery in the hopes of restoring the full functionability of the atrophic

testicle. Physicians prescribed a testicular poison, tamsulosin, in order to prevent the atrophic testicle from recovering after corrective varicocele surgery. Plaintiff had a severe adverse reaction to the tamsulosin. The tamsulosin attacked the Plaintiff's blood vessels altering the blood-organ barrier damaging multiple organs; eyes, testicles, heart, digestive system. The tamsulosin also altered the blood-brain barrier causing brain damage; insomnia, dementia, cognitive dysfunction, memory deficit, and hyperintensities within the brain. Physicians have withheld medical treatment for the adverse reaction and have medically abandoned the Plaintiff. Plaintiff's health is in serious decline as disability medical treatment is currently being withheld.

115.   Plaintiff filed complaints with Defendants citing a "Hate Crime" motivated by disability discrimination and "Elder Abuse". Defendants only investigation of the "Hate Crime" and "Elder Abuse" complaint was performed by RICO. RICO found no medical licensing law violations. Defendants based the decision on the two fraudulent documents as discussed in count 1. Defendants have refused to explain and provide any facts for Defendants decision.

116.   *"Discrimination also includes persons condoning, ignoring, or failing to correct"*, (United States Marine Corps).

34

117.   ADA Title II prohibits discrimination on the basis of disability in all services, programs, and activities provided to the public by State and local governments (except public transportation services).

118.   Defendants actions (or inactions) and conduct directly and proximately created an environment allowing physicians to commit this "Hate Crime" and "Elder Abuse" with impunity.

119.   The Defendants' actions and conduct directly and proximately caused harm and damages to Plaintiff.

120.   Federal and Hawaii State law require Defendants to report, investigate, and protect the health and welfare of the disabled and abused Plaintiff. 42 U.S. Code § 3058i; HI Rev Stat §346-224, 227, 228, 231.

121.   Defendants, having the power to prevent this ongoing "Hate Crime" and "Elder Abuse", have refused to do so and are liable, 42 U.S. Code § 1986 - Action for neglect to prevent.

122.    The Court has the authority to award relief and damages under 28 U.S.C. §
1343, 2201, 2202; 28 CFR § 35.178; 42 U.S.C. § 1983, 1985, 1986, 1988, 2000d–
7, 12133, 18116; HI Rev Stat § 480-13, 15; HI Rev Stat § 489-7, 7.5, 22; HI Rev
Stat § 662-2; HI Rev Stat § 663-1, 8.5, 8.7, 10.9.

## Count III

**123.    28 U.S.C. §1331, 1332, 1343, 1367, 2201, 2202; 42 U.S.C. § 1981, 1983,
1985, 1986, 1988, 10801, 18116; Civil Rights Act of 1964, 42 U.S.C. § 2000d et
seq; Eleventh  Amendment to the U.S. Constitution; Fourteenth Amendment
to the U.S. Constitution;  HI Rev Stat § 480-2, 13, 15; HI Rev Stat § 710-1028,
1029; HI Rev Stat § 846-51.**

### Deprivation of Civil Rights – Equal Protection of the Laws

124.    The Department of the Prosecuting Attorney for the City and County of
Honolulu has proclaimed on their website to: "The Elder Abuse Justice Unit
(EAJU) prosecutes all felony crimes where the victims are age 60 or older."

Therefore, the State of Hawaii prosecutes all felonies when the victim is age 60 or older, as required to meet the civil rights of all citizens within the State of Hawaii, insuring the "equal protection of the laws".

125.  Plaintiff is 69 years of age and the victim of an ongoing felony "Hate Crime" and "Elder Abuse"; that is not being prosecuted, that is not being investigated.

126.   Defendants have refused to provide any explanation, facts or justification for refusing to do what the laws requires; investigate and prosecute the "Hate Crime" and "Elder Abuse".

127.   Defendants, under the color of law, have denied the Plaintiff his civil right under the Fourteenth Amendment to the U.S. Constitution to "equal protection of the laws."

128.   Kauai Prosecutors Justin Kollar, Kimberly Torigoe, and Rebecca Like have accepted plea deals, confidential dispositions, with the Office of the Disciplinary Counsel for prosecutorial misconduct in this matter. Kauai County Prosecutor Justin Kollar resigned.

129.   Plaintiff has been subjected to police intimidation by Defendants. Three

KPD Police Officers appeared unannounced at Plaintiff's home within hours after

Plaintiff filed a "Hate Crime" and "Elder Abuse" complaint with KPD on March

30, 2021. One KPD Officer appeared to be dressed in full assault gear complete

with body CAM. Plaintiff asked KPD "If KPD was here to investigate the

complaint"? KPD's response was "No". KPD was not at Plaintiff's home to

investigate the complaint and there was no investigation.


130.   On June 16, 2021, Plaintiff spotted a KPD patrol car parked on Plaintiff's

property, observing Plaintiff's home. The KPD patrol car fled after Plaintiff began

to take pictures. Plaintiff has pictures.


131.   Defendants actions (or inactions) and conduct directly and proximately

created an environment allowing physicians to commit this "Hate Crime" and

"Elder Abuse" with impunity.


132.   The Defendants' actions and conduct directly and proximately caused harm

and damages to Plaintiff.

133.   Plaintiff is currently suffering with declining health and pain from the withholding of disability medical treatment that is condoned by Defendants acting under the color of law.

134.   42 U.S. Code § 3058i; HI Rev Stat §346-224, 227, 228, 231 requires Defendants to Investigate and Protect the Health and Welfare of the Plaintiff.

135.   42 U.S. Code § 1985, 1986, Defendants, having the power to prevent or aid in preventing the commission of this "Hate Crime" and "Elder Abuse", refused to do so and are liable.

136.   The Court has the authority to award relief and damages under 28 U.S.C. § 1343, 2201, 2202; 42 U.S.C. § 1983, 1985, 1986, 1988, 2000d–7.

**Prayer for Relief**

137.   Plaintiff desires medical treatment for his disabilities that have been withheld by the physicians and condoned by Defendants.

Compensatory Damages - Medical expenses.

138.   Plaintiff is in his fourth year of pre-clinical Alzheimer's disease and/or

vascular dementia. Plaintiff has been diagnosed with brain damaged, cognitive

dysfunction, memory deficit, insomnia, central nervous system disorders affecting

the brain, white-matter hyperintensities that has been linked to intracerebral

hemorrhaging and is associated with chronic microvascular ischemic disease,

vascular dementia, and Alzheimer's.

139.   Patients with Alzheimer's and vascular dementia live on average 4 to 8 years

after diagnosis, but can live as long as 20 years. The cost of personal in-home care

as the patient transitions into dementia and after transition is a substantial burden

and cost to families. Plaintiff's family should not have to bear this burden. The

average cost for full time in-home care in Hawaii is ~$234,330 per year

(Genworth's Cost of Care Survey 2019).

140.   The cost of medical treatment for personal in-home care (four years at half a

year and four years at full year) is $1,406,000.

141.   There has been no comprehensive medical examination to determine the extent of the damage to Plaintiff caused by the severe adverse reaction to the tamsulosin. The extent of the damage to Plaintiff's brain, heart, testicles, digestive system and vascular system has not been evaluated. The extent of the damage to Plaintiff's other organs has not been evaluated. The cost for damages in providing medical treatment for Plaintiff's injuries is unknown.

142.   The cost of medical treatment for (visits, diagnosis, tests, surgery, treatment, etc.) is estimated at $1,406,000, the same as in-home care costs.

143.   Compensatory damages for pain & suffering for the needless suffering of the Plaintiff is $5,000,000 ($250,000 per year for the 20 years Plaintiff was a resident of the State of Hawaii and the County of Kauai).

144.   Total Compensatory Damages is $7,812,000.

145.   Haw Rev Stat §489-7.5, states that plaintiff shall be awarded threefold damages or $23,436,000.

146.   Plaintiff request damages in the amount of $23,436,000.

Donald Greer, PhD
Plaintiff

2403 Hulemalu Rd
POB 583
Lihue, HI 96766
Don1Retired@gmail.com
808 278 0344