UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| DONALD S. GREER, PHD.,<br><br>             Plaintiff,<br><br>      vs.<br><br>STATE OF HAWAII,  DEPARTMENT OF<br>COMMERCE AND CONSUMER AFFAIRS,<br>CATHERINE P. AWAKUNI COLON, DCCA<br>DIRECTOR;  REGULATED INDUSTRIES<br>COMPLAINTS OFFICE, ESTHER BROWN,<br>RICO COMPALINTS AND ENFORCEMENT<br>OFFICER;  DEPARTMENT OF HUMAN<br>SERVICES,  DEPARTMENT OF LABOUR<br>AND INDUSTRIAL RELATIONS,<br>HAWAII CIVIL RIGHTS COMMISSION,<br>COUNTY OF KAUAI,  KAUAI POLICE<br>DEPARTMENT, TODD G. RAYBUCK, KPD<br>CHIEF; CHRISTOPHER CALIO, KPD<br>LIEUTENANT;  KAUAI POLICE<br>COMMISSION,  DOE DEFENDANTS 1-<br>100,<br><br>             Defendants. | CIV. NO. 22-00286 LEK-WRP |

**ORDER GRANTING MOTIONS TO DISMISS**

On December 5, 2022, the following motions were filed.

-Defendants State of Hawai`i ("the State"), the Department of
     Commerce and Consumer Affairs ("DCCA"), Catherine P.
     Awakuni Colon ("Colon"), the Regulated Industries
     Complaints Office ("RICO"), Esther Brown ("Brown"), the
     Department of Human Services ("DHS"), the Department of
     Labor and Industrial Relations ("DLIR"), and the Hawai`i
     Civil Rights Commission ("HCRC" and collectively "State
     Defendants") filed their Motion to Dismiss Plaintiff's
     Amended Complaint Filed on November 21, 2022 ("State
     Defendants' Motion").  [Dkt. no. 44.]

-Defendant County of Kaua`i ("the County") filed its Motion to Dismiss First Amended Complaint Filed November 21, 2022 ("County Motion").  [Dkt. no. 45.]

-Defendants Kaua`i Police Department ("KPD"), Kaua`i Police Commission ("KPC"), KPD Chief Todd G. Raybuck ("Raybuck"), and KPD Lieutenant Christopher Calio ("Calio" and collectively "County Agencies and Officials") filed their Motion to Dismiss First Amended Complaint Filed November 21, 2022 [ECF No. 43] ("County Agencies and Officials' Motion").[1]  [Dkt. no. 46.]

On December 21, 2022, pro se Plaintiff Donald S. Greer, Ph.D. ("Dr. Greer" or "Plaintiff") filed his responses to the County Motion and the State Defendants' Motion.  ["Reply against County of Kauai Defendant Motion to Dismiss the Amended Complaint," filed 12/21/22 (dkt. no. 49) ("County Opposition");[2] "Reply against Hawaii (State) Defendants Motion to Dismiss the Amended Complaint," filed 12/21/22 (dkt. no. 50) ("State Opposition").] The County and the State Defendants filed their respective reply memoranda on January 5, 2023.  [Dkt. nos. 51, 52.]  The Court finds the Motions suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local

---

[1] The State Motion, the County Motion, and the County Agencies and Officials Motion will be referred to collectively as "the Motions."

[2] Because Dr. Greer is proceeding pro se, his filings must be liberally construed.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  His County Opposition is therefore liberally construed as addressing both the County Motion and the County Agencies and Officials' Motion.

Rules"). The Motions are hereby granted for the reasons set forth below. Dr. Greer's claims against the State Defendants and the County Agencies and Officials are dismissed with prejudice, and his claims against the County are dismissed without prejudice. In other words, Dr. Greer will only be permitted to file a second amended complaint that asserts claims against the County.

## BACKGROUND

Dr. Greer initiated this action on June 28, 2022. See Complaint, filed 6/28/22 (dkt. no. 1). On October 7, 2022, this Court issued an order dismissing the Complaint, with partial leave to amend. See Order Granting in Part and Denying in Part the State Defendants' Motion to Dismiss Complaint Filed on June 28, 2022, filed 10/7/22 ("10/7 Order");[3] see also Motion to Dismiss Complaint Filed on June 28, 2022, filed 9/23/22 (dkt. no. 32) ("First Motion to Dismiss"). As noted in the 10/7 Order, Dr. Greer's original Complaint asserted 42 U.S.C. § 1983 claims alleging that he suffered disability discrimination and violations of his equal protection rights: when a varicocele that he contracted in 1966 was misdiagnosed and improperly treated by his physicians; and when proper treatment was withheld from him even after he learned about the condition in

---

[3] The 10/7 Order is also available at 2022 WL 6170627.

2018.  Dr. Greer also alleged he suffered further discrimination and civil rights violations when the State Defendants denied the administrative complaints that he tried to pursue against his physicians to address the prior discrimination and civil rights violations.  [10/7 Order at 2-3.[4]]

In the 10/7 Order, this Court:

-dismissed, with prejudice, Dr. Greer's § 1983 claims against the State and his § 1983 claims against DCCA, RICO, DHS, DLIR, and HCRC ("the State Agency Defendants"); [id. at 6;]

-dismissed, without prejudice, Dr. Greer's claims against the State and the State Agency Defendants under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, in particular Title II; [10/7 Order at 7;]

-dismissed, without prejudice, any other claims the Complaint asserted against the State and the State Agency Defendants; [id. at 8;]

-dismissed, with prejudice, Dr. Greer's § 1983 claims against Colon and Brown, in their official capacities ("State Official Defendants"), that seek damages or other retrospective relief, but the dismissal was without prejudice to the addition of § 1983 claims against them seeking prospective injunctive relief; [id. at 10;]

-dismissed, without prejudice, Dr. Greer's ADA Title II claims, and any other claims asserted, against the State Official Defendants; [id.;] and

-dismissed, without prejudice, all of Dr. Greer's claims against Colon and Brown, in their individual capacities, [id.].

---

[4] The 10/7 Order does not discuss Dr. Greer's claims against the County and the County Agencies and Officials (collectively "County Defendants") because they filed an answer to the original Complaint and did not seek its dismissal.  See County Defendants' First Amended Answer to Complaint Filed June 28, 2022, filed 9/15/23 (dkt. no. 31).

Dr. Greer filed his Amended Complaint on November 21, 2022. [Dkt. no. 43.] The Amended Complaint names the same defendants who were named in the original Complaint.[5] Compare Complaint at ¶¶ 15-17, with Amended Complaint at ¶¶ 22-24. Dr. Greer states he is no longer pursuing his § 1983 claims, and he confirms that he not seeking prospective injunctive relief. See Amended Complaint at pg. 5 ("The 1983 claims are withdrawn. Plaintiff views prospective injunctive relief as futile."). The Amended Complaint asserts the following claims: "Violations of the Fourteenth Amendment 'due process' clause" ("Count 1"); "Violations of the Fourteenth Amendment 'equal protection' clause" ("Count 2"); and a claim under "Americans with Disabilities Act Title II, 28 C.R.F. § 35.101, 35.130, 35.178, 42 U.S.C. 12131-12134 [sic]; 42 U.S.C. § 1981, 1985, 1986, 1988, 3058i, 10801, 18116; Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq; Rehabilitation Act of 1973, 29 U.S.C. § 794" ("Count 3").

The State Defendants argue the Amended Complaint alleges "essentially the same facts" as the original Complaint.

---

[5] The Amended Complaint includes numerous allegations regarding the State of Hawai`i Attorney General's office. See, e.g., Amended Complaint at ¶¶ 74-77. However, the Department of the Attorney General is not named as a defendant in this case. This Court construes Dr. Greer's allegations regarding the Attorney General's office as background allegations to support his claims against the parties specifically identified as defendants in this case.

[State Defendants' Motion, Mem. in Supp. at 1-2.]  They argue
Dr. Greer has failed to cure the defects in his claims against
them that were identified in the 10/7 Order, and therefore
Dr. Greer's claims against them in the Amended Complaint should
be dismissed with prejudice.

The County argues Dr. Greer's claims against it must
be dismissed because: Dr. Greer has expressly withdrawn his
§ 1983 claims, and Counts 1 and 2 fail because he cannot assert
claims directly under the Fourteenth Amendment; even if this
Court construes Counts 1 and 2 as alleging § 1983 claims against
the County, the claims are insufficiently pled; and Dr. Greer's
ADA Title II claims, Rehabilitation Act claims, and Civil Rights
Act Title VI claims against the County are insufficiently pled.

The County Agencies and Officials argue that, because
Calio and Raybuck are only sued in their official capacities,
Dr. Greer's claims against the County Agencies and Officials are
duplicative of his claims against the County and should be
dismissed with prejudice.

## DISCUSSION

## I.   Preliminary Issues

### A.   Counts 1 and 2

Count 1 asserts violations of Dr. Greer's rights under
the due process clause of the Fourteenth Amendment, and Count 2
asserts violations of his rights under the equal protection

clause of the Fourteenth Amendment.  Dr. Greer attempts to assert these claims directly under those constitutional provisions, rather than under § 1983.  See Amended Complaint at pg. 5 (withdrawing his § 1983 claims).

Dr. Greer's Amended Complaint must be liberally construed because he is proceeding pro se.  See Erickson, 551 U.S. at 94.  However, this Court declines to construe Counts 1 and 2 as § 1983 claims.  First, Dr. Greer expressly withdrew his § 1983 claims.  Second, it is apparent from the claims that Dr. Greer asserted in the original Complaint that he understands the principle of using a § 1983 claim to seek redress for a violation of constitutional rights.  Counts 1 and 2 assert claims directly under the Fourteenth Amendment, but it is well-established that there is "no cause of action directly under the United States Constitution[,]" and "a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."  See Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992) (citations omitted).  Counts 1 and 2 therefore fail to state plausible claims for relief and must be dismissed.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))).  The dismissal is

7

with prejudice - in other words, without leave to amend those claims - because it is absolutely clear that Dr. Greer cannot cure the defects in the claims that he attempts to bring directly under the Fourteenth Amendment.  See Garity v. APWU Nat'l Lab. Org., 828 F.3d 848, 854 (9th Cir. 2016) ("Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." (quotation marks and citation omitted)).

This Court recognizes that Dr. Greer may not have realized that § 1983 is the only mechanism through which he can assert his claims arising from the constitutional violations he alleges in this case.  Thus, in ruling on the Motions, this Court will consider whether the dismissal of Counts 1 and 2 should be without prejudice to the reinstatement of the § 1983 claims that he alleged in the original Complaint but withdraw in the Amended Complaint.

**B.    Other Authority Cited in Count 3**

Count 3 primarily asserts claims under ADA Title II and the Rehabilitation Act.  See Amended Complaint at pgs. 67-99.  The theories behind those claims are consistent with the Fourteenth Amendment claims that Dr. Greer attempted to allege in Counts 1 and 2.  Count 3 also cites: 28 C.F.R. §§ 35.101, 35.130, and 35.178; 42 U.S.C. §§ 1981, 1985, 1986, 1988, 3058i,

10801, and 18116; and the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* [Amended Complaint at ¶ 182.]  This Court must determine if Count 3 asserts claims pursuant to those authorities or if Dr. Greer merely refers to those authorities as support or background for his ADA Title II claims and his Rehabilitation Act claims.

### 1.   ADA Regulations

28 C.F.R. §§ 35.101, 35.130, and 35.178 are part of the regulations that "implement subtitle A of title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12131–12134), as amended by the ADA Amendments Act of 2008 (ADA Amendments Act) (Pub. L. 110-325, 122 Stat. 3553 (2008)), which prohibits discrimination on the basis of disability by public entities." See 28 C.F.R. § 35.101(a).  Even liberally construed, the Amended Complaint does not allege a separate claim under §§ 35.101, 35.130, and 35.178.  This Court therefore construes Dr. Greer's citations to these regulations as support for his ADA Title II claims.

### 2.   Other U.S.C. Citations

The other U.S.C. citations in Count 3 are not directly related to either ADA Title II or the Rehabilitation Act. Further, they do not appear to support substantive claims that Dr. Greer can assert based upon the factual allegations he has pled in this case.  Dr. Greer's intent in citing these statutes

is unclear because Count 3 does not contain specific factual allegations addressing most of the U.S.C. citations.  His citations to 42 U.S.C. § 1981 and the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, are examples of this.

### a.   <u>Section 1981</u>

Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." <u>Domino's Pizza, Inc. v. McDonald</u>, 546 U.S. 470, 474–75 (2006) (quoting 42 U.S.C. Section 1981(a)).  "Any claim brought under § 1981 . . . must initially identify an impaired contractual relationship under which the plaintiff has rights." <u>Id.</u> at 476 (internal quotation omitted).  A plaintiff "cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes to make or enforce." <u>Id.</u> at 479. . . .

<u>McAllister v. Disp. Prevention & Resol., Inc.</u>, Case No. 19-cv-00497-DKW-RT, 2020 WL 86434, at *3 (D. Hawai`i Jan. 7, 2020) (some alterations in <u>McAllister</u>).  Dr. Greer does not allege that he had an existing or proposed contract with any of the defendants.  Thus, reading the Amended Complaint as whole, it does not appear that Dr. Greer is attempting to assert a § 1981 claim.

### b.   <u>Title VI of the Civil Rights Act</u>

Title VI of the Civil Rights Act of 1964 ("Title VI") states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation

in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial

assistance."  42 U.S.C. § 2000d.  This district court has

stated:

> Private individuals may sue to enforce
> Title VI, but the private right of action only
> extends to cases of intentional discrimination
> and not disparate impact.  Alexander v. Sandoval,
> 532 U.S. 275, 278-81 (2001).
>
> To assert intentional discrimination,
> Plaintiffs must allege that the actions of the
> [defendant] were discriminatory, and that the
> [defendant] acted with an intent or purpose to
> discriminate based upon Plaintiffs' membership in
> a protected class.  The Comm. Concerning Cmty.
> Improvement v. City of Modesto, 583 F.3d 690,
> 702-03 (9th Cir. 2009)

Taylor v. City & Cnty. of Honolulu, CIV. NO. 22-00013 HG-KJM,

2023 WL 2753162, at *16 (D. Hawai`i Mar. 31, 2023).

In both the original Complaint and the Amended

Complaint, Dr. Greer has consistently alleged elder abuse,

disability discrimination, and hate crimes against him.  Neither

age discrimination nor disability discrimination is among the

types of discrimination prohibited in Title VI.  Thus, reading

the Amended Complaint as whole and reading it in the context of

the original Complaint, it does not appear that Dr. Greer is

attempting to assert a Title VI claim in the Amended Complaint.

c.   **Ruling**

This Court concludes that, even liberally construing the Amended Complaint, Count 3 does not assert claims pursuant to 42 U.S.C. §§ 1981, 1985, 1986, 1988, 3058i, 10801, and 18116; and Title VI of the Civil Rights Act.  Instead, Dr. Greer's citations to those statutes appear to be offered in support of his ADA Title II claims and his Rehabilitation Act claims.  For example, 42 U.S.C. § 3058i(a) states:

> In order to be eligible to receive an allotment under section 3058b of this title from funds appropriated under section 3058a of this title and made available to carry out this subpart, a State agency shall, in accordance with this section, and in consultation with area agencies on aging, develop and enhance programs to address elder abuse, neglect, and exploitation.

Dr. Greer cites § 3058i as support for his position that, as "an elder and venerable adult," the defendants had a duty to protect him, and they should have acted upon the complaints that he presented to them.  See, e.g., Amended Complaint at ¶¶ 202, 209.8, 217.6.  According to Dr. Greer, the defendants' failure to do so constituted violations of ADA Title II and the Rehabilitation Act.

If Dr. Greer wishes to assert affirmative claims pursuant to 42 U.S.C. §§ 1981, 1985, 1986, 1988, 3058i, 10801, and 18116; and the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., he must obtain leave of court to add such claims by

12

filing a motion for leave to amend his operative complaint.  In
the alternative, he may enter into a stipulation with all
remaining defendants to allow the amendment, and the stipulation
must be approved by the magistrate judge.  See Fed. R. Civ.
P. 15(a)(2) ("a party may amend its pleading only with the
opposing party's written consent or the court's leave").[6]

The Court now turns to the merits of the Motions.

## II.  State Motion

### A.  Potential § 1983 Claims

In the 10/7 Order, Dr. Greer's § 1983 claims against
the State and the State Agency Defendants were dismissed with
prejudice.  [10/7 Order at 6.]  Thus, even if Dr. Greer is
allowed to file a second amended complaint, he will not be
allowed to reallege the § 1983 claims that he alleged in the
original Complaint against the State and the State Agency
Defendants.

Dr. Greer was granted leave to amend his § 1983 claims
against the State Official Defendants to seek prospective
injunctive relief and to allege § 1983 claims against Colon and
Brown, in their individual capacities.  [Id. at 10-11.]
However, Dr. Greer has expressly declined to assert a § 1983

---

[6] There are two exceptions to this rule that do not apply
under the circumstances of this case.  See Fed. R. Civ.
P. 15(a)(1).

claim for prospective injunctive relief.  See Amended Complaint at pg. 5 ("Plaintiff views prospective injunctive relief as futile.").  The 10/7 Order gave Dr. Greer notice of the defects in his § 1983 claims against the State Official Defendants, and Dr. Greer had the opportunity to correct those defects.  Because he failed to do so, this Court concludes that it is absolutely clear that Dr. Greer would not be able to cure the defects in the § 1983 claims that he alleged in the original Complaint against the State Official Defendants.  Thus, even if Dr. Greer is allowed to file a second amended complaint, he will not be allowed to reallege those claims.

In the 10/7 Order, this Court dismissed Dr. Greer's claims against Colon and Brown, in their individual capacities, for the reasons stated in the First Motion to Dismiss.  [10/7 Order at 10.]  In the First Motion to Dismiss, the State Defendants argued Dr. Greer's § 1983 claims against Colon and Brown, in their individual capacities, failed because Dr. Greer did not plead factual allegations regarding their personal involvement in the alleged deprivation of his civil rights. [First Motion to Dismiss, Mem. in Supp. at 8 (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).]

It appears that the Amended Complaint does not assert claims against Colon and Brown, in their individual capacities.

14

There are four references to "DCCA Director Catherine P. Awakuni Colon (official capacity)" and "RICO Complaints and Enforcement Officer Esther Brown (official capacity)."  See Amended Complaint at pgs. 6-8.  These references occur in a section of the Amended Complaint that lists the defendants and defines the terms that Dr. Greer uses to refer to different groups of the defendants.  There are an extremely limited number of references to Colon and Brown in the other sections of the Amended Complaint.  In the section describing the parties, Dr. Greer notes "DCCA Director Catherine P. Awakuni Colon . . . [and] RICO Complaints and Enforcement Officer Esther Brown . . . were at all times residing in the State of Hawaii."  See id. at ¶ 23.  Dr. Greer also alleges: "DCCA Director denies fraud but provided no facts"; [id. at ¶ 41.J;] and the State of Hawai`i Attorney General's office decided not to act up his complaint because, after "discussing Plaintiff's complaint with RICO's Supervising Enforcement Officer, RICO had determined that no crime has taken place,"[7] [id. at ¶ 75].

---

[7] This allegation apparently refers to Brown because, as the Complaints and Enforcement Officer, it can be reasonably inferred that Brown is the head of RICO.  See RICO letterhead of Amended Complaint, Attachment 38 (letter dated 9/30/20 to Dr. Greer from Dolly Nakata, RICO Supervising Investigator).  This Court may consider Attachment 38 and similar attachments to the Amended Complaint without converting the instant Motions into motions for summary judgment because those documents are incorporated by reference into the Amended Complaint.  See Khoja

(. . . continued)

Although it appears that Dr. Greer is expressly limiting his claims against Colon and Brown to claims against them in their official capacities, even if the Amended Complaint is liberally construed as also alleging claims against Colon and Brown, in their individual capacities, the allegations of the Amended Complaint would not state plausible § 1983 claims against them.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.  The Amended Complaint and its attachments contain only a handful of references to individual actions by Colon and Brown. For the reasons set forth, *infra* Discussion Section II.B.1, these minimal references are insufficient to plead a plausible claim that either Colon or Brown violated the Constitution.

In light of Dr. Greer's failure to plead any factual allegations regarding Colon's and Brown's individual actions, either in the original Complaint or in the Amended Complaint,

---

v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018) (stating that "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201" are two exceptions to the general rule that the consideration of materials beyond the pleadings converts a Fed. R. Civ. P. 12(b)(6) motion to dismiss into a motion for summary judgment); id. at 1002 (stating a document is incorporated by reference in a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim" (quotation marks and citation omitted)).

this Court concludes that it is absolutely clear that Dr. Greer would not be able to cure the defects in the § 1983 claims that he alleged in the original Complaint against Colon and Brown, in their individual capacities.  Thus, even if Dr. Greer is allowed to file a second amended complaint, he will not be allowed to reallege his § 1983 claims against Colon and Brown, in their individual capacities.

**B.   ADA and Rehabilitation Act Claims**

In the 10/7 Order, this Court noted that, "'insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that **actually** violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity,'" but this Court concluded that Dr. Greer did not plead sufficient allegations to state a plausible ADA Title II claim.  [10/7 Order at 7 (alteration in 10/7 Order) (quoting United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in Georgia)).]  In the Amended Complaint, Count 3 alleges both an ADA Title II claim and a claim under Section 504 of the Rehabilitation Act.

> Title II of the Americans With Disabilities Act of 1990 ("ADA") prohibits a public entity from discriminating against any "qualified individual with a disability."  Sheehan v. City and Cnty. of San Francisco, (Sheehan I), 743 F.3d 1211, 1231 (9th Cir.) *cert. granted sub nom.*, 574 U.S. 1021 (2014), *and rev'd in part, cert. dismissed in part sub nom.* City and Cnty. of San

Francisco, Calif., (Sheehan II), 575 U.S. 600, 617 (2015).

Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, which provides:

No otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. ¶ 794.

To state a claim pursuant to Title II of the ADA, a plaintiff must show:

(1)  she is an individual with a disability;

(2)  she was excluded from participation in or otherwise discriminated against with regard to the public entity's services, programs, or activities; and

(3)  such exclusion or discrimination was by reason of her disability.

Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

A claim pursuant to Section 504 of the Rehabilitation Act is similar to a claim pursuant to Title II of the ADA but requires the plaintiff to demonstrate she was discriminated against "solely by reason of her disability." See Updike v. Multnomah Cnty., 870 F.3d 939, 949-50 (9th Cir. 2017) (citing Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001)).

Taylor, 2023 WL 2753162, at *17.

The Amended Complaint alleges that, during all relevant periods, Dr. Greer was disabled because he contracted

18

polio as a child in 1957, and he contracted a varicocele in 1966 during puberty.  See Amended Complaint at ¶¶ 1, 185.  Dr. Greer alleges he has suffered from other disabilities as a result of the events at issue in this case.  See id. at ¶ 186.

Count 3 alleges the defendants denied Dr. Greer the benefits of their services by reason of his disability.  See id. at ¶¶ 187-88.

### 1.   RICO Defendants

Dr. Greer refers to the State, DCCA, Colon, in her official capacity, RICO, and Brown, in her official capacity, collectively as the "Hawaii RICO Defendants" ("RICO Defendants").[8]  Based upon Dr. Greer's allegations, his position appears to be that the RICO Defendants' service is the office's processing of complaints from the public alleging wrongdoing by persons who hold a professional license under Hawai`i law.  See id. at ¶¶ 100-01, 104-05.

Dr. Greer attempted to utilize the RICO Defendants' service by submitting criminal complaints on February 17, 2020 and December 1, 2021 to "DCCA - RICO," alleging that the doctors

---

[8] Based on the correspondence that is included among the attachments to the Amended Complaint, it appears that RICO is an office within DCCA.  See, e.g., Amended Complaint, Attachment 37 (letter dated 5/8/20 to Dr. Greer from Kristel Fuentes, RICO Investigator); id., Attachment 40 (letter dated 2/23/22 to Dr. Greer from Colon); see also, e.g., Haw. Admin. R. § 16-89B-2 ("'RICO' means the regulated industries complaints office of the department of commerce and consumer affairs.").

who misdiagnosed him and failed to properly treat his condition committed hate crimes and elder abuse against him.  See id. at ¶¶ 100, 104; see also id. at ¶ 129.  Both complaints were dismissed because RICO found that no medical licensing laws had been violated.  See Amended Complaint at ¶¶ 101, 105; see also id., Attachment 38 (letter dated 9/30/20 to Dr. Greer from Dolly Nakata, RICO Supervising Investigator, informing him that Case No. MED 2020-93 was being closed and no further action would be taken); id., Attachment 39 (letter dated 1/4/22 to Dr. Greer from Kristel Fuentes, RICO Investigator, informing him that no further action was being taken on Case No. MED 2021-0153).

Dr. Greer alleges RICO failed to provide him with facts or the justification for its decisions.  [Amended Complaint at ¶¶ 101, 105.]  Dr. Greer complained about the lack of facts and justification, and RICO informed him that he could obtain a file regarding the investigation for a fee.  When Dr. Greer reviewed the file, he discovered two documents that he alleges were fraudulent and were previously concealed from him. [Id. at ¶¶ 106-08.]  According to Dr. Greer, although he has attempted to communicate with RICO regarding the fraudulent

documents, RICO has refused to discuss the matter with him.[9] [Id. at ¶¶ 111-12.]

Dr. Greer's ADA Title II claim against the RICO Defendants appears to be based upon his allegation that they violated his Fourteenth Amendment due process rights by considering fraudulent statements and other improper testimony during its investigation into his complaints and by denying him the opportunity to participate in the investigation. [Id. at ¶¶ 129-39, 189-95.] He appears to argue he was denied the benefits of the RICO Defendants' service because, in his view,

---

[9] Contrary to Dr. Greer's allegations, Colon responded to Dr. Greer's "February 17, 2022 letter that was emailed through the Regulated Industries Complaints Office (RICO)," in which Dr. Greer "claim[ed] a cover-up of a 'hate crime,' by RICO, in allegedly failing to properly investigate, and substantiate as meritorious, complaints MED 2020-93 and MED 2021-153." [Amended Complaint, Attachment 40 (letter dated 2/23/22 to Dr. Greer from Colon).] Colon stated:

> Since receiving your February 17th correspondence to me, RICO's Investigations Manager reviewed the MED 2020-93 case file and concurred with the matter being closed back in 2020. The Investigations Manager found nothing suspect or out-of-the-ordinary about how the complaint had been investigated. In addition, there was no·information to support your belief that the advisory committee member's statements and conclusions were fraudulent.

[Id. at 2.] Colon also noted Ms. Fuentes's determination regarding MED 2021-153 was "reviewed and supported by the [Consumer Resource Center] supervisory staff. [Id.] Further, "RICO's Complaints and Enforcement Officer supports the closure of both complaints as well grounded, professional and fair," and Colon "agree[d] with this assessment." [Id.]

their investigation into his complaints should have resulted in enforcement actions against the responsible physicians, which would stop the ongoing "abuse" Dr. Greer was suffering because of their improper treatment. See id. at ¶ 202 (alleging the "RICO Defendants were required by both Federal and State law to report, investigate, and protect the health and welfare of the abused (Plaintiff) as the Plaintiff is an elder and venerable [sic] adult)" (emphasis and citations omitted)); id. at ¶ 204 (alleging the "RICO Defendants with intentional discrimination and deliberate indifference took No action to protect the abused Plaintiff" (emphasis omitted)). Dr. Greer contends the RICO Defendants committed disability discrimination by refusing to initiate enforcement actions to address his complaints of disability discrimination and elder abuse. He also contends the RICO Defendants were "required to take appropriate action to stop that bodily harm and protect the disabled victim," and their failure to do constitute disability discrimination. [Id. at ¶ 253.]

Dr. Greer misunderstands the service that RICO provides. Dr. Greer was told that RICO

> is limited as to the types of cases that [it] may
> investigate and prosecute. This office is
> primarily responsible for taking appropriate
> action against persons or businesses that violate
> the licensing laws for the profession or vocation
> they are engaged in. Not every dispute amounts
> to a licensing law violation. If a licensing law

> violation is not established based on the
> information provided to [RICO], [its] office may
> not be able to investigate [the] concerns.

[Id., Attachment 37 (letter dated 5/8/20 to Dr. Greer from
Kristel Fuentes, RICO Investigator) at 2.]  He was also told
that RICO "is charged with receiving and processing complaints
and can seek enforcement action against a licensee only after a
preponderance of credible evidence supports a licensing law
violation."  [Id., Attachment 40 (letter dated 2/23/22 to
Dr. Greer from Colon) at 2.]  Further, even when RICO does
initiate enforcement proceedings, "RICO does not advocate for or
represent [complainants] personally."  [Id.]  RICO does not
investigate complaints in order to obtain relief on behalf of
the complainants.  Rather, RICO investigates a complaint from
the public and will initiate an enforcement action if there is
credible evidence suggesting that there has been a violation of
the licensing laws.  Dr. Greer attempted to utilize that service
and, according to his allegations in the Amended Complaint, RICO
received and considered his complaints.  Although he was
disappointed with the outcome of the RICO process, he was not
"excluded from participation in" RICO's services.  See Lovell,
303 F.3d at 1052.  Nor would Dr. Greer's factual allegations, if
proven, establish that he was discriminated against with regard
to those services by reason of his disability when RICO declined
to initiate enforcement proceedings based on Dr. Greer's

complaints.  Dr. Greer's own allegations establish that RICO investigated his complaints but declined to initiate enforcement action because there was no evidence the licensing laws had been violated.  Dr. Greer does not plead any factual allegations that RICO's decision was "by reason of [his] disability."  See id. (citation omitted).  Similarly, he fails to plead sufficient allegations regarding the requirement for a Rehabilitation Act claim that he "was denied the benefit or services solely by reason of" his disability.  See id.

Dr. Greer's ADA Title II claim and his Rehabilitation Act claim against the RICO Defendants fail to state plausible claims for relief and must be dismissed.  The dismissal is with prejudice because it is absolutely clear that Dr. Greer cannot cure the defects in the claims by further amendment of his complaint.

The State Motion is granted as to the RICO Defendants. All of Dr. Greer's claims in the Amended Complaint against the RICO Defendants are dismissed with prejudice.

## 2.  **DDH Defendants**

Dr. Greer refers to the DHS, DLIR, and HCRC collectively as the "Hawaii DDH Defendants" ("DDH Defendants"). See Amended Complaint at pg. 8.  Similar to Dr. Greer's claims against the RICO Defendants, he states he presented criminal complaints to the DDH Defendants in an attempt to get their help

24

with the abuse and discrimination allegedly inflicted upon him
by his physicians, but his complaints and requests for help were
denied without any explanation for the denials.  See, e.g., id.
at ¶¶ 143, 215, 216.  Dr. Greer alleges he was not allowed to
participate in the DDH Defendants' decision processes.  [Id. at
¶ 143.]

### a.   DHS

         According to the attachments to the Amended Complaint,
Dr. Greer submitted a complaint alleging elder abuse to DHS on
November 29, 2021.  DHS decided not to investigate the
complaint, and Dr. Greer submitted a request for DHS to conduct
an informal review of the decision.  See Amended Complaint,
Attachment 29 (12/13/21 email from Dr. Greer to DHS Directors
Office Shared Mailbox, Lisa Amador, and other DHS personnel,
with the response dated 12/15/21).  Lisa Amador, Administrator
of the DHS Adult Protective and Community Services Branch,
stated:

> We have reviewed the information you provided.
>
> Please direct concerns about the provision of
> health care to your provider and/or the
> appropriate health care regulatory authorities.

[Id. at PageID.734.]

         Haw. Rev. Stat. § 346-224(a) and (b) require that
certain persons make reports to DHS when, "in the performance of
their professional or official duties, [they] know or have

reason to believe that a vulnerable adult has incurred abuse or is in danger of abuse if immediate action is not taken." Persons who are not among those listed in § 346-224(a) may also make such reports to DHS.  See Haw. Rev. Stat. § 346-224(d). Dr. Greer asserts he is "a vulnerable adult" because of his medical and cognitive conditions and because he is unable to protect himself from the "abuse" that his physicians subjected him to by misdiagnosing and improperly treating him.  See Amended Complaint at ¶¶ 26-27; see also Haw. Rev. Stat. § 346-222 (defining "Abuse" and "Vulnerable adult").  Dr. Greer reported the perceived abuse to DHS, and he contends DHS was obligated to investigate his complaint.  See Amended Complaint at ¶ 217.6.

Haw. Rev. Stat. § 346-227 states: "Upon receiving a report that abuse of a vulnerable adult has occurred or is in danger of occurring if immediate action is not taken, the department shall cause an investigation to be commenced in accordance with this part as the department deems appropriate." Further, DHS regulations state:

(a)   The department shall screen each report of vulnerable adult abuse received to determine whether the subject of the report is a vulnerable adult who:

(1)   Has incurred abuse; or

> (2)  Is in danger of abuse if immediate
> action is not taken.
>
> (b)  When the provisions of subsection (a) are
> met, the vulnerable adult abuse report shall be
> accepted for investigation by the department.
>
> (c)  When the provisions of subsection (a) are
> not met, the department shall provide
> information, referral, or consultation services
> as appropriate.

Haw. Admin. R. § 17-1421-6(a)-(c).  Thus, DHS is not required to investigate every report of abuse of a vulnerable adult, but it is required to screen every report of abuse.  See § 17-1421-6(a).  DHS did so in this case.

Dr. Greer's request for informal review of DHS's decision not to investigate his elder abuse complaint shows that DHS conducted the required screening:

> Lisa Amador and Arin Lee from DHS have stated
> that the reasons for this decision are:
>
> 1.  [Dr. Greer] can make responsible decisions
> and can manage daily activities, as [he] can
> drive a car and barbeque a hamburger.
>
> 2.  DHS is not able to provide the protective
> services that [he is] requesting.

[Amended Complaint, Attachment 29 at PageID.734.]  Dr. Greer attempted to utilize DHS's services by reporting what he believed was abuse of a vulnerable adult.  As required by the applicable legal authority, DHS performed an initial screening of his report and declined to initiate an investigation.

Although Dr. Greer was disappointed with the outcome of DHS's reporting process, he was not "excluded from participation in" DHS's services.  See Lovell, 303 F.3d at 1052.  Nor would Dr. Greer's factual allegations, if proven, establish that he was discriminated against with regard to those services by reason of his disability when DHS declined to initiate an investigation into his report.  Dr. Greer does not plead any factual allegations that RICO's decision was "by reason of [his] disability."  See id. (citation omitted).  Similarly, he fails to plead sufficient allegations regarding the requirement for a Rehabilitation Act claim that he "was denied the benefit or services solely by reason of" his disability.  See id.

Dr. Greer's ADA Title II claim and his Rehabilitation Act claim against DHS fail to state plausible claims for relief and must be dismissed.  The dismissal is with prejudice because it is absolutely clear that Dr. Greer cannot cure the defects in the claims by further amendment of his complaint.

### b.   HCRC and DLIR

Dr. Greer does not plead any factual allegations specifically about DLIR.  He appears to have named DLIR as a defendant solely because HCRC is an agency within DLIR.  See State of Hawaii, Department of Labor and Industrial Relations, https://labor.hawaii.gov/ (last visited May 11, 2023) ("Agencies" tab with a list of the agencies within DLIR).

28

Similar to his allegations against the RICO Defendants and against DHS, Dr. Greer's claims against HCRC appear to be based on HCRC's refusal to act upon the complaint that he submitted to it.

HCRC's powers and functions include "[t]o receive, investigate, and conciliate complaints alleging any unlawful discriminatory practice under part I of chapter 489, chapter 515, and part I of chapter 378, and complaints filed under this chapter, and conduct proceedings on complaints alleging unlawful practices where conciliatory efforts are inappropriate or unsuccessful[.]"  Haw. Rev. Stat. § 368-3(1). The jurisdiction of the HCRC is limited to discriminatory practices that violate those Haw. Rev. Stat. provisions.  Haw. Rev. Stat. § 368-11(a); see also Haw. Rev. Stat. § 368-1 ("The legislature finds and declares that the practice of discrimination because of race, color, religion, age, sex, including gender identity or expression, sexual orientation, marital status, national origin, ancestry, or disability in employment, housing, public accommodations, or access to services receiving state financial assistance is against public policy.").

On January 5, 2022, Dr. Greer initiated the HCRC complaint process to address what he characterized as hate crimes and elder abuse committed against him.  See Amended

Complaint at ¶ 122.  He alleges that the HCRC dismissed his complaint on January 24, 2022, without providing sufficient "facts or justification . . . for the decision."  [Id. at ¶ 123.]

The letter that HCRC sent to Dr. Greer informing him of its decision stated:

> On January 7, 2022, we received a Pre-Complaint Questionnaire ("PCQ") from you alleging mistreatment by "Multiple Medical Institutions, State and County Government."  Please be advised that the Hawai`i Civil Rights Commission ("HCRC") does not have jurisdiction to file a complaint of discrimination for you.  The reasons for this determination are as follows:
>
> Complaints of discrimination must be filed within 180 days of the date of alleged harm.  Your allegations regarding wrongful medical treatment appear not to have occurred more recently than 2019.  These allegations are time-barred.
>
> The HCRC enforces four state statutes regarding discrimination in employment, housing, public accommodations, and access to state and state-funded services.  The HCRC does enforce criminal statutes or alleged violations of state and federal constitutions.
>
> Under the four statutes enforced by the HCRC, discrimination occurs when an individual is treated differently on the basis of a disability and/or is denied reasonable accommodation for a disability.  Your allegations, primarily of medical malpractice, do not involve allegations of such discrimination.
>
> You appear to be alleging a recent failure of the Kauai Prosecuting Attorney to prosecute what you consider to be crimes.  These appear to be the only allegations made by you occurring within 180 days.  However, we have no jurisdiction over

> decision-making by government agencies such as
> the Kauai Prosecuting Attorney.
>
> I understand that this letter may be
> disappointing to you. However, the HCRC is
> restricted in the type of complaints that can be
> filed.  For the purpose of demonstrating your
> exhaustion of administrative remedies, this
> letter acknowledges your request and documents
> the HCRC's refusal to accept your attempted
> filing of a complaint, which did not meet our
> threshold jurisdictional requirements .

[Amended Complaint, Attachment 30.]

Dr. Greer attempted to utilize the HCRC's services by filing a pre-complaint questionnaire.  The HCRC refused to accept his complaint, concluding that the intended subject of his complaint was not within the HCRC's jurisdiction and because many of the events giving rise to his claims occurred outside of the period that can be addressed in a HCRC complaint.  See Haw. Rev. Stat. § 368-11(c).  Although he was disappointed with the outcome of HCRC's complaint process, he was not "excluded from participation in" HCRC's services.  See Lovell, 303 F.3d at 1052.  Nor would Dr. Greer's factual allegations, if proven, establish that he was discriminated against with regard to those services by reason of his disability.  Dr. Greer does not plead any factual allegations that the HCRC's decision not to bring a complaint on his behalf was "by reason of [his] disability." See id. (citation omitted).  Similarly, he fails to plead sufficient allegations regarding the requirement for a

Rehabilitation Act claim that he "was denied the benefit or services solely by reason of" his disability.  See id.

Dr. Greer's ADA Title II claim and his Rehabilitation Act claim against the HCRC fail to state plausible claims for relief and must be dismissed.  The dismissal is with prejudice because it is absolutely clear that Dr. Greer cannot cure the defects in the claims by further amendment of his complaint.

The State Motion is granted as to the DDH Defendants. All of Dr. Greer's claims in the Amended Complaint against the DDH Defendants are dismissed with prejudice.

C.    **Summary**

This Court has dismissed all of Dr. Greer's claims in the Amended Complaint against the RICO Defendants (the State, RICO, DCCA, Colon, and Brown) and the DDH Defendants (DHS, the HCRC, and DLIR).  The dismissal is with prejudice.  In other words, Dr. Greer has no remaining claims against the State Defendants, and he will not be allowed to file a second amended complaint to try to cure the defects in his claims against the State Defendants.[10]  The State Defendants' Motion is therefore granted.

---

[10] As stated, *supra* note 5, this Court does not construe the Amended Complaint as pleading claims against the State of Hawai`i Department of the Attorney General.  Even if Dr. Greer intended to plead claims against the Department of the Attorney General, this Court denies leave to amend to add those claims
(. . . continued)

## III.   **County Agencies and Officials Motion**

### A.     **KPD and KPC**

This Court has stated:

> Claims against a municipality and its respective police department are treated as claims against the municipality. See, e.g., Gomes v. County of Kauai, 481 F. Supp. 3d 1104, 1110 (D. Haw. 2020) (dismissing with prejudice claims against the Kauai Police Department); Oyadomari v. Sutherland-Choy, 19-00656 JAO-KJM, 2020 WL 61573, at *2 & n.6 (D. Haw. Jan. 6, 2020) ("The Honolulu Police Department is a division of the City and County of Honolulu and is not separately subject to suit under § 1983."); Young v. Hawaii, 548 F. Supp. 2d 1151, 1164–65 (D. Haw. 2008) ("Defendants Hawaii County Police Department and the County of Hawaii are treated as one party[.]"), *overruled on other grounds by* Dist. of Columbia v. Heller, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008); Pourny v. Maui Police Dep't, County of Maui, 127 F. Supp. 2d 1129, 1143 (D. Haw. 2000) (treating the Maui Police Department and the County of Maui as one party).

Scaperotta v. Kauai Police Dep't, CIVIL NO. 20-00542 LEK-KJM, 2021 WL 1009293, at *3 (D. Hawai`i Mar. 16, 2021). This principle is not limited to county police departments and applies to all county departments. See Young, 548 F. Supp. 2d at 1165 ("Different departments within the County are not considered separate legal entities."). Further, the principle is not limited to § 1983 claims and applies to all claims

---

because the claims that Dr. Greer intended to assert against the Department of the Attorney General would suffer from the same defects as Dr. Greer's claims against the other State Defendants.

against county departments.  See, e.g., Hoe v. City & Cnty. of
Honolulu, CV. No. 05-00602 DAE LEK, 2007 WL 1118288, at *5 (D.
Hawai`i Apr. 12, 2007) ("this Court shall analyze all claims
against Defendants under the general rubric of municipal
liability").

     Therefore, all of Dr. Greer's claims in Count 3
against KPD and KPC are duplicative of his claims against the
County and must be dismissed.  The dismissal is with prejudice
because it is not possible for Dr. Greer to cure the defects in
his claims against KPD and KPC by amendment.  Similarly, if
Dr. Greer is allowed to file a second amended complaint, he will
not be permitted to include § 1983 claims against KPD and KPC
because any attempt to amend the § 1983 claims he alleged in the
original Complaint against KPD and KPC would be futile because
those claims would be duplicative of the § 1983 claims he can
assert against the County.

B.   **Raybuck and Calio**

     Similarly,

     it is well-settled that "[t]here is no longer a
     need to bring official-capacity actions against
     local government officials, for under Monell
     . . . local government units can be sued directly
     for damages and injunctive or declaratory
     relief." Kentucky v. Graham, 473 U.S. 159, 166–
     67 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114
     (1985).  See also Monell v. Dept. of Social
     Services, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018,
     56 L. Ed. 2d 611 (1978) (stating that "official
     capacity suits generally represent only another

34

> way of pleading an action against an entity of
> which an officer is an agent"); cf. Will v.
> Michigan Dept. of State Police, 491 U.S. 58, 109
> S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ("a suit
> against a state official in his or her official
> capacity is not a suit against the official but
> rather is a suit against the official's office").

Wong v. City & Cnty. of Honolulu, 333 F. Supp. 2d 942, 947 (D.

Hawai`i 2004) (alterations in Wong).  This principle is not

limited to § 1983 claims and applies to all claims against

county officials sued in their official capacities.  See, e.g.,

Lorinc v. City & Cnty. of Honolulu, Case No. 22-cv-00200-DKW-

WRP, 2023 WL 130762, at *5 (D. Hawai`i Jan. 9, 2023) ("As the

City correctly observes, those claims are ones properly asserted

against the City itself, rather than the Officer Defendants."

(citing Pistor v. Garcia, 791 F.3d 1104, 1112 (9th Cir. 2015)

("As a general matter, individual or 'personal capacity suits

seek to impose personal liability upon a government official for

wrongful actions he takes under color of law,' and that were

taken in the course of his official duties.  By contrast,

official capacity suits ultimately seek to hold the entity of

which the officer is an agent liable, rather than the official

himself: they 'generally represent merely another way of

pleading an action against an entity of which an officer is an

agent.'") (quoting Kentucky v. Graham, 473 U.S 159, 165-166

(1985)) (citations, ellipsis, and internal quotation marks

omitted))).  Therefore, to the extent that Dr. Greer attempts to

35

assert claims against Raybuck and Calio, in their official capacities, those claims are duplicative of his claims against the County.

It appears that the Amended Complaint does not assert claims against Raybuck and Calio, in their individual capacities. There are three references to "KPD Chief Todd G. Raybuck (official capacity)" and "KPD Lieutenant Christopher Gallo (official capacity)." See Amended Complaint at pgs. 6-8. These references occur in the section of the Amended Complaint listing the defendants and defining terms. There are an extremely limited number of other references to Raybuck and Calio in the Amended Complaint. In the section describing the parties, Dr. Greer notes "KPD Chief Todd G Raybuck[ and] KPD Lieutenant Christopher Calio . . . were at all times residing in the State of Hawaii." See id. at ¶ 24. The other references in the Amended Complaint do not indicate that Raybuck and Calio are also being sued in their individual capacities. See id. at ¶¶ 74, 147.

The procedural history of this case also supports an interpretation of the Amended Complaint as asserting claims only against Raybuck and Todd in their official capacities. In connection with Dr. Greer's motion to collect the costs of service of the original Complaint from the County Defendants

("Motion for Costs"),[11] the magistrate judge directed that briefing for the motion "include[e] a discussion regarding in what capacity Plaintiff has sued the individual defendants." See EO, filed 10/11/22 (dkt. no. 36).  Dr. Greer's reply in support of the Motion for Costs stated: "'Kauai KPD Defendants' is defined as Kauai Police Department (KPD), KPD Chief Todd G. Raybuck (official capacity), KPD Lieutenant Christopher Calio (official capacity), Kauai Police Commission (KPC)."  [Reply to Defendants Opposition to Plaintiff's Motion to Collect Cost of Service, filed 11/3/22 (dkt. no. 38), at 2.]  In denying the Motion for Costs, the magistrate judge found, for purposes of the Motion for Costs, "that Defendant Raybuck and Defendant Calio are being sued in their official capacity."  [Order Denying Plaintiff's Motion to Collect Cost of Service, filed 11/15/22 (dkt. no. 39), at 6.]  However, the magistrate judge noted that the order denying the Motion for Costs "in no way limit[ed] Plaintiff's ability to state a claim against Defendant Raybuck or Defendant Calio in their individual capacities in any amended complaint."  [Id. at 6 n.2.]

From the litigation of the Motion for Costs, Dr. Greer was aware of the distinction between suing Raybuck and Calio in their official capacities and suing them in their individual

---

[11] See Motion to Collect Cost of Service, filed 10/3/22 (dkt. no. 33).

capacities.  The Amended Complaint expressly identifies Raybuck and Calio as parties in their official capacities and makes no reference to either of them in his individual capacity.  Under the circumstances of this case, this Court declines to construe the Amended Complaint as asserting claims against Raybuck and Calio in their individual capacities.

All of Dr. Greer's claims in Count 3 against Raybuck and Calio, in their official capacities, are duplicative of his claims against the County and must be dismissed.  The dismissal is with prejudice because it is not possible for Dr. Greer to cure the defects in his claims against Raybuck and Calio, in their official capacities, by amendment.  Similarly, if Dr. Greer is allowed to file a second amended complaint, he will not be permitted to include § 1983 claims against Raybuck and Calio, in their official capacities, because any attempt to amend the § 1983 claims he alleged in the original Complaint against them would be futile.

This Court emphasizes that it makes no findings or conclusions regarding the issue of whether Dr. Greer can allege any plausible claims against Raybuck and Calio, in their individual capacities.  Raybuck and Calio, in their individual capacities, are not parties to the instant case.  If Dr. Greer intends to assert claims against Raybuck and Calio, in their individual capacities, he must follow the Fed. R. Civ.

38

P. 15(a)(2) procedure to amend his operative complaint to add them as defendants.

### C. **Summary**

This Court has dismissed all of Dr. Greer's claims in the Amended Complaint against the County Agencies and Officials (KPD, KPC, and Raybuck and Calio, in their official capacities). The dismissal is with prejudice.  In other words, Dr. Greer has no remaining claims against the County Agencies and Officials, and he will not be allowed to file a second amended complaint to try to cure the defects in his claims against those defendants. The County Agencies and Officials' Motion is therefore granted.

## IV. **County Motion**

### A. **Potential § 1983 Claims**

Dr. Greer states he "submitted seventeen Criminal Complaints to KPD and the Kauai County Prosecutor between 6/11/2020 and 3/15/2022."  [Amended Complaint at ¶ 59.]  The subject of these complaints was the "Hate Crime," "Elder Abuse," and disability discrimination that he raised in his complaints to the State entities described *supra*.  See id. at ¶¶ 59-61. Dr. Greer argues the County entities "ignored the facts and evidence contained in the seventeen Criminal Complaints" and failed to investigate his complaints.  [Id. at ¶ 62.]  According to Dr. Greer, KPD informed him they would not investigate his complaints because the complaints alleged medical malpractice

and were not criminal in nature, and KPD refused to provide him with any further explanation for its decision not to investigate.  See id. at ¶¶ 63-63.c; see also id. at ¶¶ 90-93. The Kauai Office of the Prosecuting Attorney also determined that Dr. Greer's complaints alleged non-criminal medical malpractice, and that office did not provide Dr. Greer with any further explanation for the determination.  See Amended Complaint at ¶¶ 80, 87-89.  In addition, Dr. Greer submitted complaints to KPC regarding KPD's handling of his criminal complaints.  See, e.g., id., Attachment 36 (letter dated 2/18/22 to Dr. Greer from Dean Pigao, Vice Chair KPC, stating the KPC determined there was insufficient evidence to substantiate Dr. Greer's complaint).

Count 1 alleges the County's failure to investigate his complaints violated his right to due process.  See Amended Complaint at ¶ 144.  Count 2 alleges the County's failure to prosecute the perpetrators of the elder abuse allegedly inflicted upon Dr. Greer constituted disability discrimination against him and deprived him of his right to equal protection. See id. at ¶¶ 164, 221.  These counts have been dismissed because Dr. Greer cannot pursue claims directly under the Fourteenth Amendment, but this Court must determine whether Dr. Greer should be granted leave to amend these claims to allege corresponding § 1983 claims against the County.

This district court has described the framework for § 1983 claims against municipalities, such as the County, as follows:

> In Monell v. Dep't of Soc. Services of the City of New York, 436 U.S. 658 (1978), the U.S. Supreme Court held that a municipality could be "sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-691. In addition, the Supreme Court has held that a municipality can be liable under Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v, Harris, 489 U.S. 378, 388 (1989). A municipality cannot be held liable under Section 1983 "**solely** because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691 (emphasis in original).
>
> As a result, a plaintiff can allege municipal liability under Section 1983 in one of three ways. First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. Id. at 690; Pembaur v. City of Cincinnati, 475 U.S. 469, 481-483 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. Ellins v. City of Sierra Madre,

> 710 F.3d 1049, 1066-67 (9th Cir. 2013).  Second,
> a municipality can be liable for a custom that,
> although not expressly enacted, is "so permanent
> and well settled" it operates with the force of
> law.  Monell, 436 U.S. at 691 (quotation
> omitted).  Third, a municipality can be liable
> for a failure to train its employees when such
> failure amounts to deliberate indifference
> towards the rights of its inhabitants.  City of
> Canton, 489 U.S. at 388.  In addition, a
> plaintiff must allege that a policy, custom, or
> failure to train actually caused a municipality's
> employee(s) to commit the constitutional
> deprivation.  Id. at 391; Monell, 436 U.S. at
> 694.

Lorinc, 2023 WL 130762, at *3 (alteration and emphasis in

Lorinc).  Thus, it is possible for Dr. Greer to pursue § 1983

claims against the County.  The dismissal of Dr. Greer's claims

against the County in Counts 1 and 2 is therefore without

prejudice to the assertion of corresponding § 1983 claims

against the County.  In order to provide guidance to Dr. Greer

in the preparation of his second amended complaint, the Court

notes the following standards and its analysis of whether

Dr. Greer's current allegations would support plausible claims

under those standards.

### 1.   Due Process

> "A section 1983 claim based upon procedural due
> process . . . has three elements: (1) a liberty
> or property interest protected by the
> Constitution; (2) a deprivation of the interest
> by the government; (3) lack of process."
> [Armstrong v.] Reynolds, 22 F.4th [1058,] 1066
> [(9th Cir. 2022)] (ellipses in original) (quoting
> Portman v. Cnty. of Santa Clara, 995 F.2d 898,
> 904 (9th Cir. 1993)).  "When protected interests

are implicated, the right to some kind of prior hearing is paramount," but "the range of interests protected by procedural due process is not infinite." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569-570 (1972) (footnote omitted).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005); see also Roth, 408 U.S. at 569 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). . . .

As to liberty, the "'expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause' of the Fourteenth Amendment." Carver v. Lehman, 558 F.3d 869, 875 (9th Cir. 2009) (quoting Olim v. Wakinekona, 461 U.S. 238, 250-51 n.12 (1983); see also id. (citing In re Cashaw, 123 Wash.2d 138, 866 P.2d 8, 12 (1994) ("The United States Supreme Court and the Ninth Circuit have clearly held that procedural laws do not create liberty interests; only substantive laws can create these interests.")). . . .

And property interests, "of course, are not created by the Constitution." Roth, 408 U.S. at 577. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. So state law can create a property interest, but "not all state-created rights rise to the level of a constitutionally protected interest." Brady v. Gebbie, 859 F.2d 1543, 1548 n.3 (9th Cir. 1988) (citation omitted)).

Duke's Inv. LLC v. Char, CIVIL NO. 22-00385 JAO-RT, 2023 WL 3166729, at *8-9 (D. Hawai`i Apr. 28, 2023) (some alteration in Duke's Inv.).

The allegations in Count 1 would not support a plausible § 1983 due process claim against the County because Dr. Greer has not alleged that he was deprived of any property right nor any liberty interest. His claim appears be based on an expectation that the County would investigate his criminal complaints. See Amended Complaint at ¶ 144. This is insufficient to allege a protected liberty interest. See Carver, 558 F.3d at 875. Thus, if Count 1 of the Amended Complaint had been pled as a § 1983 due process claim against the County, the Court would dismiss the claim.

## 2. Equal Protection

Dr. Greer's equal protection claim in Count 2 relies heavily on the specific circumstances of his case. See, e.g., Amended Complaint at ¶¶ 166, 174. The Court therefore does not construe Count 2 as alleging equal protection violations committed against classes of persons based on age and/or disability. Rather, the Court construes Count 2 as alleging an equal protection violation committed against Dr. Greer as a "class of one." The United States Supreme Court has stated:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been

44

> intentionally treated differently from others
> similarly situated and that there is no rational
> basis for the difference in treatment.  See Sioux
> City Bridge Co. v. Dakota County, 260 U.S. 441
> (1923); Allegheny Pittsburgh Coal Co. v.
> Commission of Webster Cty., 488 U.S. 336 (1989).
> In so doing, we have explained that "'[t]he
> purpose of the equal protection clause of the
> Fourteenth Amendment is to secure every person
> within the State's jurisdiction against
> intentional and arbitrary discrimination, whether
> occasioned by express terms of a statute or by
> its improper execution through duly constituted
> agents.'"  Sioux City Bridge Co., supra, at 445
> (quoting Sunday Lake Iron Co. v. Township of
> Wakefield, 247 U.S. 350, 352 (1918)).

Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per

curiam) (alteration in Olech).

The allegations in Count 2 would not support a

plausible § 1983 equal protection claim against the County

because Dr. Greer has not alleged that he has been intentionally

treated differently from other similarly situated persons, i.e.

that other persons who presented similar complaints to County

entities were treated differently.  Further, even if he does

allege differential treatment, Dr. Greer's allegations would not

support a finding that there was no rational basis for the

difference in treatment.  Dr. Greer's allegations and

attachments suggest that his complaints were considered on the

merits, but the County offices declined to proceed further

because the offices concluded that Dr. Greer's allegations were

unsubstantiated.  For example, Dr. Greer acknowledges that KPD

45

officers "did take the time to read the Criminal Complaints" and that there is a report which corresponds to each of his criminal complaints.  See Amended Complaint at ¶¶ 63, 63.h; see also id., Attachment 31 (KPD incident report for report received on 6/11/20).  Thus, if Count 2 of the Amended Complaint had been pled as a § 1983 equal protection claim against the County, the Court would dismiss the claim.

B.   **ADA and Rehabilitation Act Claims**

Dr. Greer attempted to utilize the services that KPD and other County offices provide by making complaints.  Those complaints were received and considered, although all of the County offices declined to take further action.  Although he was disappointed with the outcome of these processes, he was not "excluded from participation in" the County's services.  See Lovell, 303 F.3d at 1052.  Nor would Dr. Greer's factual allegations, if proven, establish that he was discriminated against with regard to those services by reason of his disability when the County offices declined to take further action on his complaints.  Dr. Greer does not plead any factual allegations indicating that the County offices' decisions were made "by reason of [his] disability."  See id. (citation omitted).  Similarly, he fails to plead sufficient allegations regarding the requirement for a Rehabilitation Act claim that he

"was denied the benefit or services solely by reason of" his disability.  See id.

Dr. Greer's ADA Title II claim and his Rehabilitation Act claim against the County fail to state plausible claims for relief and must be dismissed.  However, because this is the first time that Dr. Greer is being given notice of the deficiencies in his claims against the County, and because it is arguably possible for Dr. Greer to cure the defects in those claims by amendment, the dismissal is without prejudice.

C.   **Summary and Leave to Amend**

The County Motion is granted and all of Dr. Greer's claims against the County are dismissed.  However, the dismissal of Counts 1 and 2 is with prejudice as to the claims against the County brought directly under the Fourteenth Amendment, but the dismissal is without prejudice to the restatement of corresponding § 1983 claims against the County.  The dismissal of Count 3 is without prejudice.  Dr. Greer is granted leave to file a second amended complaint that alleges the following claims: a § 1983 due process claim against the County; a § 1983 equal protection claim against the County; an ADA Title II claim against the County; and a Rehabilitation Act claim against the County.  Dr. Greer does not have leave to assert any other

claims in the second amended complaint.  Dr. Greer must file his second amended complaint by **June 29, 2023**.[12]

The second amended complaint must include all of the factual allegations that Dr. Greer's claims are based upon, even if they were previously presented in the original Complaint or in the Amended Complaint.  The second amended complaint cannot incorporate any part of the prior complaints by merely referring to the prior complaints.  Dr. Greer is cautioned that, if he fails to file his second amended complaint by **June 29, 2023,** the claims in the Amended Complaint that were dismissed without prejudice in this Order will be dismissed with prejudice. Dr. Greer is also cautioned that, if the second amended complaint fails to cure the defects in his claims against the County that are identified in this Order, those claims may be dismissed with prejudice.  In other words, Dr. Greer may not be allowed another opportunity to try to cure the defects in his claims against the County.

If Dr. Greer's claims against the County are dismissed with prejudice, he would have no remaining claims in this case and the case would be closed.

---

[12] If Dr. Greer wishes to assert any claims against new defendants, or if he wishes to assert new claims against the County, he must follow the procedure set forth in Fed. R. Civ. P. 15(a)(2).  If Dr. Greer chooses to file a motion pursuant to Rule 15(a)(2), the motion will be considered by the magistrate judge in the normal course.

## CONCLUSION

For the foregoing reasons, this Court rules as

follows:

-the Motion to Dismiss Plaintiff's Amended Complaint Filed on
     November 21, 2022, which the State Defendants filed on
     December 5, 2022, is GRANTED, and all of Dr. Greer's claims
     against the State Defendants are DISMISSED WITH PREJUDICE;

-the Motion to Dismiss First Amended Complaint Filed
     November 21, 2022 [ECF No. 43], which the County Agencies
     and Officials filed on December 5, 2022, is GRANTED, and
     all of Dr. Greer's claims against the County Agencies and
     Officials are DISMISSED WITH PREJUDICE; and

-the Motion to Dismiss First Amended Complaint Filed
     November 21, 2022, which the County filed on December 5,
     2022, is GRANTED, insofar as all of Dr. Greer's claims
     against the County are DISMISSED WITHOUT PREJUDICE.

The dismissal of Dr. Greer's claims against the County in

Counts 1 and 2 of the Amended Complaint is with prejudice,

insofar as he cannot reallege claims directly under the

Fourteenth Amendment, but the dismissal of Count 1 and 2 is

without prejudice to the assertion of corresponding claims

brought pursuant to § 1983.  Dr. Greer must file his second

amended complaint by **June 29, 2023,** and the second amended

complaint must comply with the rulings and directions in the

instant Order.

There are no remaining claims in this case against the

State, DCCA, Colon, RICO, Brown, DHS, DLIR, HCRC, KPD, KPC,

Raybuck, and Calio.  The Clerk's Office is DIRECTED to terminate

those parties as defendants on **May 31, 2023,** unless Dr. Greer

files a timely motion for reconsideration of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 15, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**DONALD S. GREER, PHD. VS. STATE OF HAWAII, ET AL; CV 22-00286
LEK-WRP; ORDER GRANTING MOTIONS TO DISMISS**